# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

MICHELLE A. WILLIAMS,                    )
                                         )
        Plaintiff,                 )
                                         )
v.                                       )    No.:   3:12-CV-423-TAV-HBG
                                         )
TECHNOLOGY FOR ENERGY CORP.,             )
                                         )
        Defendant.                 )

## <u>MEMORANDUM OPINION AND ORDER</u>

This civil action is before the Court on Defendant's Motion for Summary Judgment [Doc. 11] as to all of plaintiff's claims. Plaintiff has responded in opposition [Doc. 22], and defendant has replied [Doc. 23]. The Court heard oral argument on the motion on November 18, 2013. For the reasons set forth herein, the Court finds that genuine issues of material fact exist that preclude summary judgment. Accordingly, defendant's motion for summary judgment will be denied.

This is an employment discrimination case in which plaintiff asserts that defendant, her employer, committed violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code. Ann. §§ 4-21-101, *et seq.* [Doc. 1-1]. This matter was originally filed in the Circuit Court for Knox County, Tennessee, but defendant removed the action pursuant to 28 U.S.C. § 1441(a) [Doc. 1].

Defendant argues that plaintiff has failed to establish a prima facie case for any of her claims and that, pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant is entitled to judgment as a matter of law [Doc. 11]. Moreover, even assuming plaintiff establishes a prima facie case of discrimination as to any claim, defendant asserts that it has articulated legitimate, nondiscriminatory reasons for its failure to promote plaintiff, which plaintiff has not shown to be pretextual. Finally, defendant asserts that, for some claims, plaintiff failed to exhaust administrative remedies and timely file the claims. Plaintiff clarifies in her response that these discrete incidents that defendant argues are time-barred are not in fact separate claims, but are simply offered to provide evidence of defendant's discriminatory work environment and practices. Plaintiff responds that she has established a prima facie case as to her claims, and defendant's reasons for its failure to promote her are pretextual.

## I. Facts

Plaintiff, who was born in 1960, was formerly employed by defendant as a Sales Administrator [Doc. 1-1 ¶ 8]. She was hired by defendant in 2002 as a Product Support Coordinator in its Aviation Division [Doc. 11-1 p. 10], which designs, manufactures, and markets aircraft equipment [Doc. 11-3 p. 7]. Plaintiff initially worked under the supervision of Jerry Justice ("Justice") [Doc. 11-1 p. 13], and while working under Justice in 2006, plaintiff received a reprimand for engaging in excessive personal phone calls during work hours [*Id.* at 18]. Plaintiff explained at oral argument that these calls concerned her infant grandchild, who was suffering from a serious illness at the time. In

2

2006, plaintiff's supervisor also reported her to Larry Lehmann ("Lehmann") and Buddy Simpkins ("Simpkins") for "sobbing all day at her desk" [*Id.* at 19]. Lehmann is defendant's Vice President of Sales and Marketing, and Simpkins is defendant's President [Doc. 12].

Later, plaintiff was placed under the supervision of Lehmann, who plaintiff claims discriminated against her on the basis of her age [Doc. 1-1]. In 2007, plaintiff applied for the position of Sales Administrator within defendant's aviation department [Doc. 11-1 p. 26], and she was considered for the position along with January Phillips ("Phillips"), a customer service representative for defendant who was around 30 years of age at the time [*Id.* at 27]. As part of the selection process, plaintiff appeared before a "round table" of department employees who submitted feedback as to her suitability for the position [Doc. *Id.* at 27–28]. Plaintiff was ultimately chosen for the position over Phillips, though she contended at oral argument that Lehmann wanted to hire Phillips.

Plaintiff claims that Lehmann told her that he did not want to promote her to Sales Administrator [Doc. 11-1 p. 31], Lehmann claims that he promoted her despite being told by Simpkins and others that doing so was not a good idea [Doc. 11-3 pp. 24–25], and Simpkins claims he "had reservations and concerns" about promoting plaintiff "because she wasn't known for doing her job well then," but deferred to Lehmann's decision to promote plaintiff [Doc. 11-2 p. 69]. Defendant placed plaintiff on a ninety-day probationary period in connection with this promotion to Sales Administrator based on

her job performance, ability to get along with others, and previous problems with conducting personal business on company time [Doc. 11-1 p. 106].

In terms of her performance as Sales Administrator, e-mails from March 2011 confirm that plaintiff, in her own words, "made a mistake" on an order [*Id.* at 40], and other e-mails from April and May of 2011 indicate that there were problems with orders handled by plaintiff, though plaintiff seems to dispute whether she was responsible [*Id.* at 40–41]. Moreover, in March 2011, plaintiff was reprimanded for a "disruptive incident" involving what the reprimand from her supervisor, Lehmann, characterizes as "intolerable" and an "unprofessional outburst" regarding a new company policy [*Id.* at 103]. Yet, plaintiff has a very different version of events as she contends that she did not even raise her voice and expressed her disagreement with a new policy in a respectful manner [*Id.* at 45]. Plaintiff does admit that she has "probably" criticized defendant's management to a co-worker and "may have" complained to a co-worker about her job [*Id.*].

In June 2011, defendant posted a job opening for a Regional Sales Coordinator ("RSC") position in its aviation division [*Id.* at 51], and plaintiff expressed her interest in the position to several employees, including Lehmann [*Id.* at 53–54]. Plaintiff first told Lehmann of her interest in the position in 2009, at which time he told her that she could not have the position and that, as plaintiff recalls, "he wanted another Steve Sennett" [*Id.* at 54]. An employee named Kelsey Wood ("Wood"), who was then 28 years of age, also applied for the position in the summer of 2011 [*Id.* at 62]. Wood had worked for

4

defendant as a Product Support Coordinator for just over seven months at the time[1] [Doc. 11-4] and had previously worked for an aviation maintenance facility in Maine for almost two years [Doc. 11-5]. At oral argument, plaintiff pointed out that Lehmann disciplined her just three months before refusing to promote her to the RSC position and submitted that by that time he had already told Wood that she would be a great fit for the position. Plaintiff also emphasized that her supposedly disruptive behavior was greatly exaggerated by Lehmann and paled in comparison to an outburst by a younger female employee, which was met with less punishment by Lehmann.

The parties dispute who was more qualified for the RSC position as between Wood and plaintiff. Plaintiff notes that she had worked in the aviation department for nine years and knew the products, their functions, and defendant's customers [Doc. 22]. In addition, plaintiff avers that her years of experience made her at least as qualified, and likely more qualified, for the RSC position [*Id.*]. Defendant responds that Wood had: (1) a college degree, (2) worked in an aviation maintenance facility (defendant sells its products to such facilities), (3) studied for an aircraft maintenance certification, and (4) prior experience in sales [Doc. 12]. Defendant offers several reasons why it did not find plaintiff to be the most qualified candidate for the RSC position, and plaintiff attempts to rebut these reasons as pretextual. More specifically, defendant argues that plaintiff was unqualified in terms of education and applicable work experience, plaintiff interacted

---

[1] According to Jane Hall, defendant's accounting manager and former human resources manager, Wood was hired by defendant through a temporary employment agency in August 2010 and became a TEC employee on November 22, 2010.

poorly with co-workers, plaintiff had recently been disciplined by her supervisor, and plaintiff had not performed competently as Product Support Coordinator and Sales Administrator [Docs. 12, 23].

In the course of determining who to hire, Lehmann allegedly discussed the open RSC position with his boss, Simpkins, who has stated that he had several conversations with Lehmann regarding his "belief that [plaintiff] was unsuitable for the position" [Doc. 11-2 p. 33]. Additionally, Simpkins notes that plaintiff had approached him on several occasions and expressed her interest in the RSC position, and each time, Simpkins discouraged her and told Lehmann to do the same because Simpkins felt "she was not competent for [the RSC] job" [*Id.*]. In fact, when Lehmann reviewed the list of candidates with Simpkins, which included plaintiff, Simpkins recalls that he said something like: "You're not seriously considering Michelle, are you?" [*Id.* at 60].

When asked if he had any conversations with Simpkins regarding who to hire for the RSC position, Lehmann replied: "I don't recall." [Doc. 22-9 p. 165]. Lehmann subsequently stated that he talked with Simpkins about the position when he recommended that Wood be hired, but could not recall the specific conversation [*Id.* at 166]. According to plaintiff, after counsel showed Lehmann the previously mentioned interrogatory answer, he recalled that Simpkins advised against promoting plaintiff to the RSC position and that Simpkins told Lehmann that he would overrule any decision to hire plaintiff for that position [*Id.* at 196]. Yet, Lehmann could remember nothing else about the conversation [*Id.*]. Ultimately, plaintiff did not receive an interview for the

RSC position [Doc. 11-1 p. 63]. Lehmann claims that he did not formally interview plaintiff because he did not believe her to be as qualified as Wood for the position [Doc. 11-3 p. 198].

Wood recalls that Lehmann told her when she was hired as Product Support Coordinator in 2010 that she would be a "great candidate" for the sales job that would be available in the near future, which was the RSC position [Doc. 22-7 ¶ 4]. Subsequently, Wood was hired for the RSC position [*Id.* at ¶ 3].[2] At the time of her promotion, Wood had not been disciplined or received any "write-ups" concerning her work performance [Doc. 11-4]. Yet, defendant terminated Wood on June 14, 2013 [Doc. 22-7 ¶ 25].

Plaintiff's age discrimination claims are aimed at Lehmann. In support, plaintiff offers her own testimony and that of several former and current employees. First, Karen Rezek ("Rezek"), a former employee of defendant, recalled that when Lehmann was hiring for two entry-level positions, Product Support Coordinator and Consignment Coordinator, he would say: "I want somebody young. I want somebody young. I want somebody young." Yet, Rezek stated that she did not hear Lehmann make such comments in reference to the RSC position for which Wood was hired and had not heard Lehmann comment on, or refer to, plaintiff's age [Doc. 22-14 p. 107].

Plaintiff states that she heard Lehmann express a preference for hiring younger females for the Product Support Coordinator position "quite a few" times [Doc 22-1 p.

---

[2] As for the timing of Wood's promotion, plaintiff avers in her complaint that it occurred on July 14, 2011 [Doc. 1-1 ¶ 10], while defendant claims that Wood was extended a formal offer on or about July 25, 2011 [Doc. 22-11]. For purposes of this motion, the Court will assume that the promotion took place on July 14, 2011, meaning that Wood had been employed full time by defendant for almost eight months at the time [Doc. 11-4].

7

119].  Plaintiff also recalled hearing Lehmann say that, in reference to the Product Support Coordinator position for which Wood was initially hired by defendant, "40's too old," while on the phone with an employment agency regarding a 40-year-old candidate for the position [*Id.* at 120].  Moreover, plaintiff takes issue with the fact that, instead of utilizing the roundtable interview process that had been used in the past for some open positions, Lehmann simply hired Wood based on her resume [Doc. 22].  At oral argument, defendant contended that this process was not utilized by defendant for every hire and that Lehmann was the administrator that often chose to use it.

Wood states that she submitted her resume when applying for the RSC position and that Lehmann never discussed her specific qualifications, experience, or training with her [Doc. 22-7 ¶ 5].  Wood also recalls that after she submitted her resume to Lehmann, he told her that "discussions were still ongoing" but Wood "was going to get the job" [*Id.* at ¶ 7].  Wood notes that while she maintains she was qualified for the RSC position, she believes her looks and youthfulness helped her candidacy and that Lehmann implied that being a female would help her to sell products [*Id.* at ¶ 6].

In addition, plaintiff alleges that defendant fostered an environment of discrimination.  Regarding the work environment, plaintiff notes that some employees referred to Lehmann as the "Hugh Heffner" of the department [Doc. 22-14 pp. 36–39].  Also, plaintiff claims that Lehmann referred to his younger female sales employees as "Aces Angels."  ACES" is an acronym for the department [Doc. 22-13 p. 25].  Wood also submits that Lehmann was involved in designing jackets purchased by defendant with an

8

"Aces Angels" logo on them, which Wood describes as "business professional yet very short and form-fitting" [Doc. 22-7 ¶¶ 15, 16]. Wood and another female employee, Brandy Day, wore these jackets to at least one trade show that Lehmann attended, and Wood recalls that Lehmann joked that plaintiff would not fit in such a jacket [*Id.* at ¶ 18]. Wood claims that Lehmann "implied" that she and Day should walk around the trade show "looking cute" while handing out literature concerning defendant's products [*Id.* at ¶ 19].

Finally, plaintiff alleges that she was treated unfairly by defendant in other respects relative to how the younger female employees were treated. Specifically, plaintiff claims that: she was reprimanded for her inappropriate clothing while younger females were not; she was disciplined for arriving late to work while younger females were not; and she was forced to make up missed time while younger females were not [Doc. 22]. In support of these allegations, plaintiff offers the declaration of one of defendant's employees, who states, based on his observations, Lehmann has shown favoritism to the younger females under his supervision [Doc. 22-2 ¶ 9]. Wood, who has since been terminated by defendant, apparently for missing too much work, states that after plaintiff filed this lawsuit, Lehmann and defendant's human resource manager began disciplining her for behavior for which she had not previously been disciplined, including her work attire and tardiness [Doc. 22-7 ¶ 24].

On September 20, 2011, plaintiff filed a charge of discrimination with the EEOC [Doc. 11-1 p. 105]. The EEOC issued her dismissal and notice of rights on June 7, 2012

[*Id.* at 105, 107]. Plaintiff filed her complaint in the instant matter in the Circuit Court for Knox County on July 6, 2012, and defendant removed the case to this Court on August 10, 2012 [Doc. 1].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material;

that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Plaintiff has brought age-based discrimination claims against defendant, alleging violations of the ADEA and THRA. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In addition, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "[W]ith

11

both direct and circumstantial evidence, the burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age was the but-for cause of their employer's adverse action.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. at 177 (internal quotation marks omitted)). So, while "[e]mployers may not consider an employee's age for its own sake, . . . the ADEA does not prohibit them from considering other factors that correlate with age." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Yet, importantly, "'[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus'" under the direct evidence approach. *Geiger*, 579 F.3d at 621 (internal alterations and quotation marks omitted) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). This is because "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age,' satisfy [the direct evidence] criteria." *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (internal alterations omitted) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)).

12

Plaintiffs who cannot offer direct evidence of discrimination may still base their claims on circumstantial evidence. In the Sixth Circuit, claims based on circumstantial evidence under the ADEA are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Geiger*, 579 F.3d at 621. Under the *McDonnell Douglas* framework, the burden is first on the plaintiff to establish a prima facie case under the relevant statute. 411 U.S. at 802. To make out a prima facie failure to promote claim, a plaintiff:

> must show that (1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011). This burden "is not onerous," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), and is "'easily met,'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (quoting *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).

Once the plaintiff has set forth a prima facie case of discrimination, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for failing to promote the plaintiff to the position sought." *Provenzano*, 663 F.3d at 814 (citing *Burdine*, 450 U.S. at 254). The employer does not have to show that it was actually motivated by this nondiscriminatory reason, but merely must raise a genuine issue of fact as to whether it acted in a discriminatory fashion. *Id.* at 814–15.

13

If the employer meets this burden, then "the plaintiff must demonstrate that the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination." *Id.* at 815. The plaintiff may demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Importantly, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quoting *Burdine*, 450 U.S. at 253).

Despite the mechanical nature of the *McDonnell Douglas* framework, it is important to remember that:

> Pretext is a commonsense inquiry: did the employer [fail to promote] the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is. One can distill the inquiry into a number of component parts, and it can be useful to do so. But that should not cause one to lose sight of the fact that *at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination*.

*Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (emphasis added) (citations omitted). Furthermore, "[a]t the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Id.* If the plaintiff has satisfied this standard, her case is sufficient to proceed to trial.

14

As for plaintiff's THRA claim, the Sixth Circuit has stated: "[w]e apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006). Claims brought under the ADEA, and consequently those brought under the THRA, may be established through direct or circumstantial evidence. *Rowan*, 360 F.3d at 547–48.

### 1.      Direct Evidence

There is no direct evidence of age discrimination in this case. Though plaintiff has presented testimony that Lehmann made statements regarding certain Product Support Coordinator and Consignment Coordinator positions that evinced his desire to hire a younger candidate, no such statements are alleged to have been made about the RSC position at issue in this matter. Because statements unrelated to the decisional process cannot satisfy the plaintiff's burden under the direct evidence approach, plaintiff has failed to create a genuine issue of material fact under that approach as to whether age discrimination occurred.

### 2.      Circumstantial Evidence

Plaintiff has set forth a prima facie case of age discrimination. As to the first prong of the prima facie analysis, plaintiff is a member of the ADEA and THRA's protected class as she is at least 40 years of age. 29 U.S.C. § 631(a). As to the second prong, defendant disputes the notion that plaintiff was qualified for the RSC position, but "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case" because "[t]o do so

would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc). Moreover, in considering this motion, the Court must view the facts in a light most favorable to plaintiff. So, while both parties have presented arguments as to whether plaintiff was qualified, given the view of the facts the Court must take at the prima facie stage, the Court finds that plaintiff was qualified for the RSC position. Plaintiff also applied for the RSC position, which is another requirement in the second prong.

Plaintiff satisfies the third prong because it is undisputed that defendant considered her for the RSC position. As to the final prong of the prima facie analysis, Wood received the promotion to RSC and was not a member of the protected class at that time. Yet, the parties dispute whether plaintiff was similarly qualified to Wood. Again, the prima facie stage of the *McDonnell Douglas* framework is not the time to consider defendant's nondiscriminatory justifications for its decision, and thus, considering the facts in a light most favorable to plaintiff, the Court finds that she and Wood were similarly qualified at the time Wood was awarded the RSC job. Therefore, the Court finds that, for purposes of defeating a motion for summary judgment, plaintiff has

established her prima facie case of age discrimination, and the burden shifts to defendant

to articulate a legitimate, nondiscriminatory reason for its action.[3]

Defendant offers several nondiscriminatory justifications for its action. At bottom,

however, defendant states that it did not promote plaintiff because (1) it believed Wood

to be more qualified for the position, (2) plaintiff had a disciplinary history, and (3)

plaintiff had a poor work performance history. In order to create a triable issue of fact as

to pretext, plaintiff "must produce sufficient evidence from which a jury could reasonably

reject [defendant's] explanation of why it [took an adverse employment action against]

her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

Plaintiff has created a triable issue of fact as to whether defendant's justification

that Wood had superior experience or was more qualified for the RSC position than

plaintiff was pretextual. In fact, when Lehmann was asked to review the qualifications of

both Wood and plaintiff at the time of Wood's promotion and state whether it was his

opinion that plaintiff had inferior sales experience, he said that it was not [Doc. 22-9 pp.

203–04]. One of defendant's previously offered reasons for its decision is that plaintiff

lacked "direct, face-to-face aviation sales experience" [Doc. 22-11]. But, plaintiff

submits Wood had no such experience when she was hired for the RSC position because

---

[3] At oral argument, defendant contended that plaintiff's case was simply based on the fact that she was within the protected class and Wood was not—circumstances that do not even establish a prima facie case. Yet, plaintiff has proffered sufficient evidence to satisfy the four-pronged test for prima facie claims, and, as will be discussed subsequently when the Court addresses the issue of pretext, sufficient evidence to call into question defendant's purported reasons for its decision not to promote plaintiff.

17

her only previous sales experience was acquired from her six-month employment with Liberty Mutual Insurance in 2007 [Docs. 22, 22-7 p. 2–3].

Moreover, though defendant states that Wood was more qualified because she had previously been employed by an aircraft maintenance facility, had studied for an aircraft maintenance certification (yet had not obtained the certificate), and had a college degree, plaintiff stated at oral argument that other employees who performed RSC functions or served in that position did not have college degrees or aircraft maintenance certifications, belying any notion by defendant that such qualifications were necessary prerequisites for the RSC position. More specifically, Eric Hale ("Hale"), who has been employed by defendant as an RSC within the aviation division since 2006, states that he does not have any aviation maintenance experience other than what he has learned through his employment with defendant [Doc. 22-6 ¶ 6], and Steve Sennett, who represents that "much of [his] job in the past was identical to the Regional Sales Coordinators," does not have a college degree [Doc. 22-2 ¶ 5]. Furthermore, plaintiff had been employed by defendant within the ACES department for much longer than Wood and had more experience in sales generally. As a result, the Court finds that a juror could reasonably determine that defendant's justification that plaintiff was not as qualified as Wood has no basis in fact.

As for defendant's contention that plaintiff's disciplinary history justified its failure to promote her, plaintiff states that defendant can only support its argument by citing an incident from 2006 concerning excessive phone calls, an incident where

18

plaintiff was sobbing due to her workload, and the March 2011 incident where Lehmann, the alleged discriminator, disciplined plaintiff based on her conversation with a co-worker concerning a new policy. Plaintiff stated at oral argument that she accepts responsibility for engaging in excessive phone calls, but explained this conduct by noting that, at the time, her grandchild was hospitalized with a serious illness, and she was frequently talking with her daughter on the phone. In addition, plaintiff noted that she began sobbing at her desk some time in 2006 as a result of her workload, but submitted that such behavior does not warrant discipline or justify a failure to promote her to the RSC position. Notably, plaintiff was promoted in 2007, after these alleged disciplinary incidents, and employed until August 2013 as a Sales Administrator. The Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether these disciplinary incidents were sufficient to motivate defendant's decision not to promote plaintiff or actually motivated that decision.

As to the March 2011 discipline from Lehmann, plaintiff contends that a younger female employee, Sarah Lowry ("Lowry"), engaged in a more egregious tirade against Hale, yet received less discipline [Doc. 22-6 ¶¶ 8–9]. In fact, Hale states that to his knowledge, no one disciplined Lowry. Though defendant submits that Lowry was disciplined, disputes as to the conduct of plaintiff versus that of Lowry and Lowry's corresponding discipline create questions of fact that preclude summary judgment.

Finally, plaintiff submits that Lehmann treated her differently than younger female employees in terms of discipline for tardiness and clothing. To this end, plaintiff submits

the affidavit of Wood, who states that as between her and plaintiff, Wood was the one who frequently wore "form-fitting clothing" [Doc. 22-7 ¶ 12]. Moreover, Wood states that after plaintiff filed the present action, Wood began receiving discipline for her attire—"even for wearing the same clothing [she] had worn multiple times [to work while employed by defendant]." Given these facts, a juror could reasonably doubt whether plaintiff's disciplinary history motivated Lehmann's decision not to promote her.

Similarly, plaintiff has raised a question of material fact regarding defendant's contention that plaintiff's poor work performance, along with Simpkins's comments to Lehmann concerning plaintiff's work performance, motivated Lehmann's decision not to promote plaintiff. Plaintiff submits that defendant has offered nothing concrete to support this justification and that Lehmann could not even remember the conversation with Simpkins until he was prompted with that information during his deposition. In response, defendant contended at oral argument that plaintiff has admitted that she made mistakes in her work.

The fact that Lehmann purportedly did not remember the alleged conversation in which Simpkins told him that he would overrule a decision to promote plaintiff evinces a question of material fact as to whether Simpkins's alleged comments actually motivated Lehmann's decision not to promote plaintiff. Moreover, though plaintiff was reprimanded for excessive phone calls, this reprimand occurred before her previous promotion, and a juror could reasonably doubt whether this motivated defendant's decision not to promote her five years later. Similarly, a juror could reasonably doubt

20

that the fact that plaintiff once sobbed at her desk in 2006 because of her workload motivated defendant's decision not to promote plaintiff, as there is nothing in the record to suggest plaintiff's performance suffered as a result. Finally, the mere fact that plaintiff admitted to having made mistakes in filling out orders does not, in and of itself, entitle defendant to judgment as a matter of law on the issue of pretext.

Defendant argues that it has presented several non-discriminatory reasons that collectively justify its decision not to promote plaintiff. Yet, in *Asmo*, the Sixth Circuit held that when an employer contends that several factors collectively justified its decision, "in order to survive summary judgment, [a plaintiff] need not show that all of the factors articulated by [the employer] are false but rather, only that some of the factors are false and a mere pretext for discrimination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006). Therefore, in light of the Court's findings, genuine issues of material fact remain as to the issue of pretext, and granting summary judgment would be improper.

Notably, defendant contended at oral argument that plaintiff could not show that but for her age, she would have been promoted. Yet, given that plaintiff has shown that genuine issues of material fact exist as to whether defendant's purported reasons in fact motivated its decision not to promote plaintiff, the Court finds that such issues of material fact within the ADEA circumstantial evidence framework necessarily indicate that material issues of fact exist as to whether, but for plaintiff's age, she would have been promoted to the RSC position. Because a juror could reasonably doubt defendant's

21

explanation for its decision, and given the circumstantial evidence that Lehmann had previously sought younger candidates for open positions and favored younger female employees, a juror could similarly doubt defendant's contention that no but-for causal nexus exists between plaintiff's age and defendant's decision. Therefore, defendant's motion must be denied.

## IV.    Conclusion

For the reasons set forth above, plaintiff has proffered evidence which, taken collectively and in the light most favorable to plaintiff, creates a genuine issue of material fact as to whether defendant's justifications for failing to promote her are pretextual. Moreover, because THRA claims are analyzed under an identical framework as ADEA claims, plaintiff has also proffered evidence indicating a triable issue of fact as to age discrimination under the THRA. Accordingly, Defendant's Motion for Summary Judgment [Doc. 11] is hereby **DENIED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE